The next case on the call of the docket is agenda number 8. People, number 1, 2, 3, 5, 0, 5. People, State of Illinois v. Leonard Gayden. And the appellant, returnee, Mr. Richard Rethel. Please come to the podium. May it please the court, my name is John Rethel. I represent the defendant appellant petitioner, Leonard Gayden. Mr. Gayden was convicted of unlawful use of a weapon for possessing a short barrel shotgun in his apartment. There are two issues in this case. The first issue is whether the record is sufficient to determine whether trial counsel was ineffective for failing to file a motion to suppress the discovery of the shotgun. The parties briefed this issue on the merits of the court below. However, the appellate court found on its own that the record was incomplete and instructed Mr. Gayden to file a petition for post-conviction relief, which he cannot file and could not file because he had already completed his sentence. That brings us to the second issue in this case, whether this court must intervene to ensure that Mr. Gayden gets a ruling on the merits of his claim. Now, the first issue requires this court to apply straightforward Fourth Amendment law to the facts of this case. Police entered Mr. Gayden's home without a warrant. To do so, they must have had probable cause and exigent circumstances to support the entry. Here, the record established from the officer's testimony at trial that they were responding to a report of a man with a shotgun in front of the building. Officer Glinski and his partner were the first officers on the scene. Officer Glinski entered the common areas of this building, and as he reached the third floor landing, he saw through Mr. Gayden's open apartment door  Mr. Gayden dropped the shotgun and shut the door. At that point, Officer Glinski made an immediate forced entry. None of these facts gave Officer Glinski or any other officers probable cause to believe a crime had occurred. Before we proceed, counsel, why couldn't a defendant have filed his post-conviction petition at the same time his direct appeal was pending? That's certainly the state's position in this case that there is no problem because the defendant in this case could have filed a fallback petition, in essence, raising the exact same claim that was raised or was about to be raised in the direct appeal at the same time raising that same claim in the trial court. That's a problematic procedure for a number of reasons. The first of which is it's very inefficient. It would require two courts to consider the exact same issue at the exact same time using the exact same record, which would not be prepared as soon as the defendant filed the notice of appeal. In this case, the record wasn't actually prepared for seven months. Very often the record isn't prepared for longer than that. Certainly in some counties it takes longer, and in other counties it takes a shorter amount of time. But the defendant may not necessarily know what claims could be raised on direct appeal and could be raised in a post-conviction petition. And that's really at the heart of the matter here. Rules of appellate procedure require defendants to raise claims either in a direct appeal if the record is sufficient and they cannot raise those claims in post-conviction petitions, or they must raise a claim in a post-conviction petition if the record is not sufficiently felt for direct appeal and they cannot raise those claims in direct appeal. So to raise the same claim in two different forms would be to undermine the claim by arguing in each individual form that the claim can't actually be decided in the alternative form that it was raised in. The other big problem with this claim is that you'll end up having two courts deciding whether, in fact, the record is sufficient and the merits of the matter. And on these kinds of claims where the record is arguably sufficient and the claim must be raised on direct appeal, the petition would necessarily have to get advanced to second-stage proceedings. And if it didn't, then you'd have two appeals going at the same time. If it does get advanced to second-stage proceedings, these are claims where the defendant is going to have to raise them on direct appeal and will have already received counsel on direct appeal. You'll have another state-appointed attorney at state expense assisting the defendant at second-stage proceedings. You'll have the state having, with its already crowded caseload, having to respond in two different forms to the exact same claim. Is an inefficiency better than losing a PC appeal? Well, I think that there's a couple things at play. The inefficiency certainly isn't fixed by adding to the crowded appellate and trial court caseloads. But even if that's not a concern, it's difficult for post-conviction defendants, especially pro se, to discern what issues must be raised on direct appeal and what issues must be raised in post-conviction proceedings. They're certainly not advised upon a conviction that they have to file a petition for post-conviction relief to preserve any particular issue that they want to raise. But they are advised upon a conviction, this is Supreme Court Rule 605, that they have appellate rights, and to protect those appellate rights, they must file a notice of appeal within 30 days, and then they will be given an appellate attorney, and that attorney will raise any appellate claims that they wish to raise. They don't know that they have to raise, they're not advised that they have to file also a post-conviction petition, because filing a notice of appeal doesn't actually protect all of their appellate rights, that they actually have to do this other thing. And defendants with very short sentences won't have very much time to do that and won't be able to do it very often before the record is actually produced or before they speak with an attorney. So certainly it is at least theoretically possible that a defendant could file a concurrent post-conviction petition, but it's not advisable and it certainly isn't fair. The other point is it really is hard to determine whether some of these claims have to be raised on direct appeal or must be raised in post-conviction petitions. Judges often have disagreements about whether the record is sufficient to decide a claim. It's happened in Beach where the appellate court split as to whether the record was sufficient to decide a claim of ineffective assistance at counsel. It happened in this case where both of the parties briefed the issue on the merits. The State came to the conclusion that the record was sufficient to establish there was no Fourth Amendment violation. We argued that the record was sufficient to establish there was a Fourth Amendment violation. It was the justices who disagreed with us on their own about the sufficiency of the record. This has happened in other cases, certainly the ones that we cited in our brief, Feller's, Alonzo O., and CHW, where the Fourth District acknowledged in essence that the record is sometimes difficult to determine whether the record is sufficient to decide an issue on appeal. In those cases, the court retained jurisdiction and remanded under 615B. And we put forward that 615B or some alternative procedure is a much better way of handling these tricky questions of what happens when a defendant with a very short sentence and an arguable record that requires the defendant to raise an issue on direct appeal, what happens when the defendant raises that issue and the appellate court ultimately disagrees with whether the record is sufficient. Can I ask a practical question? In this case, what was the time frame between the notice of appeal and the record being filed and the first brief being filed? Sure. So Mr. Gaden was sentenced in February of 2015. Five months later, the Office of the State Appellate Defender filed a certificate in lieu of record, which the record was presumably complete at that time. And the defendant finished the sentence on February of 2016, and then the OSAD filed an opening brief in December of 2016, so approximately 10 months after the defendant finished the sentence. So this concern about what action should the defendant take, part of that is the practicality is that it takes a long time for the record to be complete for the appellate counsel to review. That's correct, Your Honor. It takes a long time for often the state to file a response brief as well, and it's certainly not all on the appellate that it gets here. This case was pending for quite some time, and Mr. Gaden served quite a lot of his sentence before it was ultimately resolved at the trial court level. And that could be for a number of reasons. Very often it's because it takes the state a long time to get the discovery together. But ultimately, Mr. Gaden didn't have nearly as much time as most defendants do to complete a direct appeal and then to file a subsequent petition for post-conviction relief, which is really what the Post-Conviction Hearing Act contemplates is the proper sequence of events. The Post-Conviction Hearing Act establishes that a defendant has six months following the end of a direct appeal to file a petition for post-conviction relief, and that's really a preferable way of handling these matters for a number of reasons, the first of which, the most important of which, is because if there's a preserved error or an error that's clear on the face of the record, then the defendant could file a direct appeal, litigate that issue, and there would be no need for post-conviction proceedings after that. In addition to that, the defendant may not know all of the post-conviction issues that should be raised until the direct appeal is over, and that's primarily because the defendant can only raise claims of ineffective assistance of appellate counsel in a post-conviction proceeding. And so while we suggest that, in this case, the appellate court should have used its 615B authority to retain jurisdiction and remand the matter for an evidentiary hearing, as Mr. Gaden asked at every single stage of the proceedings, the court could do that, or it could follow some alternative procedure. But I want to talk about 615 first, because the statement seems to suggest that this would be a dramatic expansion of the Post-Conviction Hearing Act, and it would be no such thing. It would be exactly what the court did in Fellers, Alonzo O, and CHW. It would be simply telling the appellate court to use the tools it already has to ensure that defendants who raise claims on direct appeal but can't get a decision because they received short sentences and the court ultimately disagrees with either one or both of the litigants' assertions that the record is sufficient, it would be instructing the appellate court to use 615B to acknowledge that these defendants lack another avenue to get relief and then to retain jurisdiction and remand it for an evidentiary hearing on their claims. That would ensure that these defendants get a due process, get their due process right to a decision on the merits of their claims of ineffective assistance of counsel. And it would not be a dramatic change of the Post-Conviction Hearing Act. In fact, it wouldn't affect the Post-Conviction Hearing Act at all. It would just acknowledge that the Post-Conviction Hearing Act is inadequate and does not actually protect some of these defendants, this small class of defendants but this small but significant class of defendants. Would this court need to overrule Carrera? It would not. Carrera is all, and this is what I'm trying to get at. Carrera is all about changing the Post-Conviction Hearing Act or establishing an alternative procedure to help defendants under the Post-Conviction Hearing Act. And what we're saying is if a defendant files a notice of appeal and the appellate court has jurisdiction, the Post-Conviction Hearing Act may bar that defendant from later filing a petition for post-conviction relief, but the appellate court can still use its authority under 615B to simply retain jurisdiction and remand the matter for an evidentiary hearing. There's nothing about Carrera that would prevent this court from making that ruling. There's nothing about 615B that would prevent the appellate court from retaining jurisdiction and remanding. That happens all the time. And so there's nothing inherently difficult about the 615B procedure. I would note that it doesn't protect all of the defendant's rights, and that's why we do suggest an alternative in our brief, which is to provide defendants with additional standing under the Post-Conviction Hearing Act if they proceed on appeal and don't get a decision on appeal, and can't file a petition because they've lost standing because their sentences have ended. In that scenario, it may be that the defendant hasn't filed a concurrent post-conviction petition raising the one issue on direct appeal because they have several other issues that they'd like to raise, and by filing a petition, they'd lose the ability to raise the other issues. They may not be aware of those other issues, or one of those other issues may not rise until the direct appeal is complete, which would be ineffective assistance of appellate counsel. And so these are two options that this court could use. It could either instruct the appellate court to remand the matter in these circumstances where a defendant has raised an issue but won't get a decision before the defendant completes their sentence. It can remand the matter, and the defendant can then get an evidentiary hearing on the claim. Or it could extend the Post-Conviction Hearing Act's protections to defendants who really have diligently asserted their right to try to get a ruling on the merits of their claims, but then finish their sentence before the direct appeal had ended. And that would be consistent with this court's decision in People v. Warr, which it did almost exactly the same thing for defendants of misdemeanor and who received misdemeanor sentences. The Post-Conviction Hearing Act didn't help them either, and this court stepped in and used the supervisory authority to establish a procedure that would allow misdemeanor defendants to get a ruling on the merits of their claims. So for those reasons, we think that there are certainly avenues available to this court to establish procedures to help Mr. Gayden, and if not just Mr. Gayden, to also help the other defendants in this class of defendants who cannot get issued decisions on their claims. And I suspect that this court has received in the wake of each, which is a sound decision in and of itself, I suggest that I suspect that this court has received a number of PLAs where the litigants have argued whether the record is actually sufficient to decide the claim that was raised on direct appeal. So this would hopefully potentially alleviate some of that problem as well. But this court doesn't really need to get to that thorny issue if it decides that the record here was sufficient to establish that there was no probable cause for exigent circumstances warranting an entry into Mr. Gayden's home. And that was the initial issue on appeal, and that was the issue that the state challenged on appeal. And so as I was saying just very briefly earlier, the officers never received a tip of a crime. A report of a man with a shotgun in front of a building is not a report of a crime. And when Officer Glinsky got to the third floor landing, seeing a person standing in their own home holding a shotgun is not a crime in and of itself either. Mr. Glinsky shut the door very quickly. There's no reason to believe that Officer Glinsky could have seen that the gun was half an inch shorter than the law actually allowed at the time. But assuming but not conceding that the officers had probable cause, they still lacked exigent circumstances to get into the home. And at the trial, at the appellate court level, the state argued that there were two exigencies, that flight or the risk of destruction of the evidence warranted an immediate entry into Mr. Gayden's apartment. But neither of those arguments really hold water. Mr. Gayden didn't have a smelter. He couldn't have melted down this gun. This isn't drugs, and it couldn't have been flushed down the toilet. The gun was going to remain in the house, in the apartment, in the unit. This was also a third floor unit, and both officers testified that 8 to 10 officers responded to the call. The building was surrounded. Mr. Gayden couldn't have just run out the door, and it's unlikely that he would have jumped out of the third floor window. And with so many officers on the scene, they certainly could have surrounded the building and waited for a magistrate or a judge to issue a warrant. After all, this was in the middle of the day. And that's really what the Fourth Amendment requires, that the police go to a judge to establish, to determine whether they have probable cause, and if they do, then they can go ahead and enter the unit pursuant to a lawfully issued warrant. That didn't happen here. And if trial counsel wasn't able to glean that from the discovery, it was certainly apparent after the officers testified at trial. At that point, trial counsel should have moved to suppress the discovery of the shotgun. And because trial counsel failed to do so, the State had that evidence available at trial, and it resulted in Mr. Gayden's conviction. Are you conceding there was probable cause? We are not conceding. I'm saying assuming but not conceding there was probable cause, the officers still have to have exigent circumstances to get into the unit. But no, we don't believe that there was probable cause in this case. We certainly don't believe that there was exigent circumstances. For those reasons, we think that the record is, in fact, sufficient to find, for this Court to find, that trial counsel was ineffective for failing to file a motion to suppress. Is it your argument that the officer would have had to have known that the barrel was less than 18 inches, or could he have probable cause to believe that the barrel was less than 18 inches? He would have needed probable cause to believe that the barrel was less than 18 inches to have probable cause to believe that the shotgun was illegally shot. Okay. It's not illegal to open carry a shotgun in your own home. So unless the officer could discern this very small difference in the legal length of the barrel of the shotgun, then he did not have probable cause to enter the building or to believe that, to enter the unit or to believe that a crime had occurred. Okay. So you're saying he has to know that it was less than 18. He can't believe that it might have been less because it looked shorter than the normal shotgun and that it was so close. Just. For probable cause. I think that he may have, in this case, reasonable suspicion to believe that the shotgun might have been illegally shot. But given the facts, the dues to trial, I don't think that there's probable cause to establish that the officer could have known that the gun was less than 18 inches. And you're saying he has to have known that. He has to have, his knowledge has to meet the legal definition of probable cause to believe that a crime has occurred. And from his vantage point, we don't believe that he could have had probable cause to believe that a crime was occurring in front of him. Just following up on Justice Carmoner, given the charges against the defendant, isn't it true that there might not be need to develop the record concerning the events leading up to defendant's arrest? Well, our argument is that the record is more than sufficient to establish that there was no probable cause and certainly absolutely no extra circumstances to warrant entering the unit. And so without the gun and without the specific measurement of the gun, there certainly isn't enough evidence to establish that Mr. Gayden had actually possessed a short-range shotgun. Does trial strategy enter into it when the version of the events was so dramatically different between the defendant and the police officers? Might that rise trial strategy as far as the counsel? Can you see no way that that might be trial strategy? I can see no way that suppressing the only evidence that the state has against the defendant. I can see no trial strategy for failing to make that motion, particularly in a bench trial where this was going to be decided before a judge who was capable of discerning the difference between the testimony of the witnesses and specifically the legality of the entry into the unit that resulted in the discovery of the only evidence that the state had against the defendant. So in this particular circumstance, I don't believe that trial strategy plays a role. There certainly is no discernible strategic benefit to allowing the state to produce evidence that they found a short-barrel shotgun and that they measured the barrel of the shotgun and that it was half an inch too short. In fact, counsel, if the motion had been filed, the record could have been more fully developed, couldn't it, with respect to the information the officer had before he made the entry into the apartment? Well, yes, it could have. If I may answer the question, I have run out of time. But it doesn't need to be more fully developed. And I think what's important, and the state does rely on the police reports in its own brief, the police reports make no mention of any of the speculative facts that the state brings up to say that the record needed to be more developed. What in essence would have happened is the record would have included facts that the police officers omitted from their police reports and their So certainly at a minimum the officers would have been impeached by omission, but their testimony alone, what they did actually testify to, is enough for this court, for the trial court, and for the appellate court to have found that the evidence should have been suppressed. Thank you, counsel. Mr. Kriegel. Good morning. May it please the court, counsel. I'm Assistant Attorney General Jason Kriegel for the people. Defendants claim that his counsel was ineffective for failing to file a motion to suppress, cannot prevail on the record that's before this court. No motion to suppress was filed, and so parties had no reason to explore why the police entered the defendant's apartment or why he was arrested, nor is there any record about what trial counsel's strategy was or what her pretrial investigation did. And Strickland v. Washington places the burden on defendant to come forward with facts to overcome the background presumption that trial counsel's conduct is reviewed deferentially. And because this claim was raised on direct appeal, defendant faces a second presumption, a well-established presumption, that any gaps in the record have to be construed against the appellate. So that makes his burden insurmountable in this case on these facts. Now, the Post-Conviction Hearing Act and this court's rules allow defendants to develop facts in the circuit court in order to support an effective assistance claim. And those procedures allow the Department of Counsel to help in developing those facts. Here, in this case, defendant had more than a year in which he could have filed a Kriegel motion or could have filed a post-conviction petition, raising his claim, but he failed to do so. And now because of the terms of the Post-Conviction Hearing Act, because his sentence is now completely discharged, and because of this court's decision in Carrera, he's not entitled to additional opportunities to raise his claim. Counsel, can a defendant claim ineffective assistance of counsel, both in the direct appeal and in his post-conviction proceeding, if they're filed at the same time? That's right, Justice Thomas. And as you pointed out, the James Harris case, I believe, says that there is nothing improper. If a defendant wants to raise a claim on direct appeal and on post-conviction, nothing prevents him from doing that. And, in fact, he must do it if he has any evidence that is outside the record, assuming that the time for filing a post-trial motion has passed. Certainly, the issue can be raised upon direct appeal if there's an opportunity to develop facts in the trial court post-trial. Now, on the facts, on the current record, the defendant is asking this court to flip the usual presumptions on their head. He wants the court to conclude that the lack of testimony about probable cause and exigent circumstances means that, in fact, there was no probable cause or exigent circumstances. But, as we point out, the only issue at trial here was whether the defendant possessed a disobedient document. That was the only charge. And so there was no need to delve into why the defendant was arrested. And, in fact, the defendant's argument here depends on an opposite presumption, on assuming that, assuming essentially a wholly improbable set of facts that eight to ten police officers were dispatched to this apartment building for what the defendant says was no crime at all, just possessing a shotgun. That these officers then broke into the defendant's apartment and arrested him without learning any additional information about what was happening on the scene. And then defense counsel, faced with the unlawful possession charge, failed to consider that she could move to suppress the only evidence, the only physical piece of evidence in the case. It just doesn't make sense, and it goes against Strickland's assumption to say that we're going to assume that counsel failed in her duties here. And to answer Justice Thomas' question about how this could have been strategized, I think it's quite possible. I mean, it's hard to speculate about what happened here. We don't know because there's no record. But we do know that a defendant testified that he was not the one who Officer Golinski saw in the doorway with the gun. So it's possible that defense counsel simply didn't want to call his credibility into question by filing a motion to suppress and then potentially bringing in facts about the assault on the skis or who knows what other facts the police knew at the time that they arrested the defendant. And to respond to the defendant's point that the state did not argue that the record was insufficient, that is not correct, I would refer the Court to page 12 of the Applebee's brief below, in which the state argued that it's almost never appropriate to resolve this type of complaint on direct appeal because, quote, it's highly unlikely that the state would garner the resources to treat the propriety of the officer's actions. And then the state cited Fugel v. Evans, which was an appellate court decision which held the same thing that the Court held in this case, that the record was insufficient to decide an effective assistance. So the state absolutely did argue that. And even if they hadn't argued that, they were certainly permitted to defend the reasoning of the appellate court, as Applebee did. And just to briefly address Justice Carmeier's question about what the officer needed to know about the shotgun. The Texas v. Brown U.S. Supreme Court case that was cited in our brief, it is absolutely not necessary for the officer to know with certainty that this was 17 1⁄2 inches versus 18 inches. It's only necessary to have a reasonable belief that an item may be contraband. And so this Brown case was about bagging with drugs. A police officer saw the bag in the car and had probable cause to conduct the search. Obviously, there was no way that the officer could know with certainty that those were drugs, but it was a reasonable assumption based on the circumstances. It was equally could have been reasonable here. We don't know because the officer was never asked the question. And I'm no expert on guns, but my understanding is that a shotgun is generally a 28-inch barrel. This was 17 1⁄2 inches. So it was about a foot shorter than a normal shotgun. And the police officer may have been able to testify about his experience with guns, his experience with illegal guns on the job, and explain that under the circumstances he did believe that it was an illegal shotgun. We don't know because those facts were never developed. So then turning to defendant's second argument about other opportunities to raise this claim, I want to emphasize first that defendant did have opportunities to bring his ineffective assistance claim. So after the verdict in January 15, he could have filed a Frankel motion at that point. And then after the sentencing in February 2015, he could have filed a post-conviction petition up until the time when he discharged his sentence about a year ago. Counsel, is that ultimately your argument that moving forward in every case, a defendant without counsel needs to either make a Frankel motion or file a post-conviction petition simultaneously with a notice of appeal? It doesn't need to be simultaneously, Judge. It just needs to be. But that is your point, that in every single case where there is a conviction, where the record has not been developed, has not been prepared, and appellate counsel has not been involved to frame issues. To preserve any of these issues, a pro se defendant must do one or the other. Well, the pro se defendant must, if he has evidence that supports, that's outside the record, that supports an ineffective assistance claim, he must bring that claim while he is still serving his sentence. And this Court has recognized that virtually all defendants who are filing post-conviction petitions are acting pro se, and there is no entitlement to speak within a jury for filing a post-conviction petition. There are a number of procedural rules. So would it be wise for trial counsel to advise his client that he should either make a Frankel motion or file a PC immediately? Does the trial lawyer have an obligation to do that when the defendant is sentenced to probation? Or is it ineffective assistance of trial counsel not to warrant? Well, I do think there may be a conflict of interest for counsel to advise about his own ineffectiveness, but I suppose counsel could, as a general rule, make that sort of an advisory. But as your point points out, our rules, our admonitions to defendants doesn't include this idea that there's a – unless they move forward with a pro se claim, either Frankel or post-conviction, in a probation kind of setting, they're going to lose a right to challenge issues outside the record. Should we amend our rule to warn defendants that they need to do this? I don't think so, Your Honor. This is a problem that is faced by virtually all criminal defendants. The vast, vast majority of defendants are not filing – are going to plead guilty and not file a direct appeal at all. So they're never going to have an opportunity to talk to somebody at OSAT about when they have to file a post-conviction petition or what the procedure for doing that is. We expect that pro se defendants are able to come forward if they have evidence of ineffective assistance presented to the court. All they have to do is make the gist of a claim, provide some evidence outside the record. At that point, they're entitled to the appointment of counsel to develop those claims and to further investigate. So I understand the concern that a pro se defendant may not know all of his rights, but that's true of every potential pro se post-conviction petitioner. And then with respect to – with respect to counsel's argument about Rule 615, I would just point out that he concedes in his reply brief that in order to have a remand under Rule 615, there'd need to be a substantial showing of a constitutional violation, and there is no substantial showing on this record because, as I've explained, there's no facts in this record to overcome the presumption that counsel acted reasonably here. A defendant would like to infer from the absence of fact that something went wrong, but there's nothing in this record to suggest it. So if, in some circumstances, there might be a reason to remand under Rule 615, there's certainly no reason to do that here. And we obviously think the proper procedure is to file a post-conviction petition. That's the way that this Court has said a defendant should go about developing the record to raise its ineffectiveness. With respect to this Court's decision in Warr, which held in 1973 that misdemeanors were entitled to post-conviction remedy, that decision would not help this defendant because he had a greater opportunity than was given to the misdemeanors in Warr. The rule that was set out there, the remedy that was set out there, was that a post-conviction must be filed within six months of a final judgment. As I pointed out, the defendant had over a year in which he could have filed his post-conviction petition. Warr was also decided before the U.S. Supreme Court decided Pennsylvania v. Finley, in which it held there's no right under the Constitution to any collateral review. So certainly if the legislature could say there's no right to any post-conviction remedy, there's nothing unconstitutional, certainly, about saying that the defendant needs to bring his post-conviction claim while he's in custody and to at least bring the gist of the claim to the Court without counsel. And I believe it was Justice Thomas who pointed out it would be necessary to overrule Carrera. In this case, there's nothing to distinguish the facts of that case where the defendant had no opportunity to consult with counsel prior to, before he realized that he was subject to deportation. And this Court said there is no remedy here. The General Assembly said you must file a post-conviction petition while you remain in custody. If there are no other questions, we would ask that the Court confirm the judgment. Thank you, counsel. Mr. Griffin? Yeah, I would just like to clean up a few things, Your Honors. First, Carrera is easily distinguishable. In that case, the defendant could file an immediate notice of appeal. The appellate court never had jurisdiction over the defendant's case. And that involved an issue that was not arguably apparent on the record. It was a private conversation between the defendant and trial counsel about the consequences of a plea that necessarily required an evidentiary hearing and would have had to have been brought in a petition for post-conviction relief. Whereas this is an issue that arguably had to be brought on direct appeal because the record is arguably sufficient to decide it. We don't concede that 615B requires a substantial showing. We simply suggest that is a practical standard that the appellate court can use. But in Fellers, CHW, and Alonzo O, the Court didn't establish a standard for remanding. It simply acknowledged that the defendant in those cases couldn't file a petition and remanded for an evidentiary hearing to allow the defendant to get a ruling on the claim. The State has repeatedly said that the defendant is required to develop evidence outside the record to support a petition for post-conviction relief. I think that's flatly wrong by this Court's prior decisions, but it's also important to think about what a petition in this case would have looked like. The State is speculating that only the evidence that the defendant should have developed is the evidence that it has, specifically evidence from the testimony of the officers that they didn't give. It's unreasonable to expect a defendant to get officers to sign affidavits, attach those to a petition, and have affidavits essentially say that what we wrote in our police reports and what we testified to at trial wasn't the complete story. The petition in this case would have essentially been, look at the record. Based on this record, my attorney was ineffective. And if the State would have come back and said they needed more evidence, then it could have done so, and maybe that way it would have produced an evidentiary hearing. The State didn't even do that at the appellate court level here. It simply moved forward and asked the courts to decide the issue on the merits. In addition, I think that this Court has a very real concern with what defendants know. The State seems to suggest that if a defendant doesn't file a crankle motion, that it's the defendant has somehow waived any opportunity to raise an ineffective assistance claim on direct appeal. That has never been the law. It shouldn't be the law. It does create conflicts at the trial court level during trial and at sentencing. And quite frankly, this Court does have a rule that states exactly what the defendant must be advised upon sentencing with regards to their appellate rights, and it makes no mention of post-commission proceedings. If this Court is going to deny defendants going forward with an opportunity to get an evidentiary hearing after a direct appeal or insist that they file immediate post-commission petitions if they have short sentences, we would certainly recommend that this Court amend Rule 605 to make that clear to defendants but not hold that new rule to Mr. Hayden. He certainly didn't know in this case, and it was unreasonable to expect him to have that. The State makes the argument that petitioners are almost always filing pro se petitions for post-commission relief. That's certainly true. It also argues that they never talk to attorneys. That's certainly untrue. Defendants almost always, if they are seeking to challenge their convictions, start with a direct appeal. Then they are all entitled to an OSAD attorney who will discuss the difference between a direct appeal and post-commission proceedings and will advise them on filing a pro se petition for post-commission relief. So it's simply not true that defendants don't ever talk to an attorney before filing a pro se petition. The majority of defendants, I believe, actually do. I would also finally like to note that the State's position essentially eviscerates Veech because what it's doing is it's saying because we can speculate about facts that are completely outside the record, no claim of ineffective assistance to counsel can ever really be raised on direct appeal. And because we can always speculate as to whether trial counsel had a strategic reason for failing to file something, no claim of ineffective assistance to counsel can ever be raised on direct appeal. This Court expressly rejected those arguments in Veech. And the State certainly would have to have some basis for speculating on facts that it brings forth to this Court. And it doesn't in this case. The only real recorded issue that the State wants to bring to this Court's attention is this claim by Sierra Keyes that she had been threatened with a gun. But the police records are very clear on this one issue, and that's they spoke to Mrs. Keyes after they entered the unit, and it wasn't until then that she made an allegation. And that allegation was never even followed up by the State's Attorney's Office. The only issue, the only charge that went forward at trial here was unlawful use of a weapon. So for these reasons, we think that the record is sufficient to determine whether trial counsel was ineffective. We think that it establishes that trial counsel was ineffective. This Court should rule on that basis. But if it doesn't believe that the record is sufficient, we're asking this Court to provide Mr. Gayden with the means to get a ruling on the merits of this case. If there are no other questions. Thank you, Your Honor. Case number 123505, People v. Leonard Gayden, will be taken under advisement as agenda number eight. I want to thank Mr. Griffin and Mr. Griegel for their arguments today. Thank you.